IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHAWNEE TERMINAL RAILROAD CO., INC. ) ) ) Plaintiff, ) ) v. ) ) J.E. ESTES WOOD CO., INC., et al., ) ) Defendants. ) | Civil Action No. 09-0113-KD-N |

REPORT AND RECOMMENDATION

This matter is before the court on the following: defendants J.E. Estes Wood Co., Inc. and A.A. Nettles, Sr. Properties, L.L.C. Motions to Dismiss for Lack of Jurisdiction (docs. 5 and 6, respectively)[1]; plaintiff's response in opposition (doc. 11 ); defendants' reply brief (doc. 14), plaintiff's motion for leave to file surreply (doc. 15) and defendants' objection and alternative motion for leave to file surreply (doc.16).[2]  This matter has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Upon consideration, it is the recommendation of the undersigned that defendants' Motions to Dismiss be GRANTED.

---

[1] Defendants have alternatively requested jurisdictional discovery; the burden of persuasion is on the plaintiff and all information concerning its business operations are within its possession and control.  In light of the court's findings, jurisdictional discovery is unnecessary.

[2] The parties' respective motions to file sur-reply briefs (docs. 15, 16) are GRANTED and the court has considered the arguments set forth therein in making this Report and Recommendation.

I.   Factual Background [3]

Plaintiff Shawnee Terminal Railroad Co., Inc. ("STR") is a short line railroad holding company. It is an Iowa corporation and is a wholly owned subsidiary of Pioneer Railcorp. STR and the other subsidiaries of Pioneer Railcorp share centralized management and support services, centered in Peoria, Illinois.

All defendants are citizens of Alabama and nowhere else. (Doc. 5, ¶9.)

STR owns approximately 63 miles of track, 2.5 miles of it located in Illinois and the remainder, just over 60 miles, is located in Alabama.[4] STR's operations are based in Monroeville, Alabama where it employs five people who work as train crew members or laborers. These employees do not have management authority. STR's Alabama operations consist primarily of freight rail switching services, track maintenance and rail car storage services. The company also maintains a single crew reporting station in Alabama. All officers and directors of the company are also officers and directors of the parent and/or other subsidiary companies and are based in Cairo, Illinois. In addition, STR "usually" uses two to three contract laborers to operate trains and perform mechanical work in that location. Plaintiff states that STR's Illinois operation is also a common carrier railroad, like the one it operates in Alabama, and in addition to its 2.5 miles of track in

---

[3]  Unless otherwise noted, the information in this section is drawn from the Affidavit of Michael Carr, attached as Exhibit A to doc. 11, plaintiff's opposition to defendants' motions to dismiss.

[4] Plaintiff also cites STR's membership in the American Short Line and Regional Railroad Association, which "interchanges cars, through other carriers, with the entire North American freight rail system." However, plaintiff does not indicate how often, if at all, STR has availed itself of this service. The membership itself has little relevance to the determination of the company's principal place of business.

Illinois, maintains an engine house and ancillary buildings of an undisclosed number and nature.[5] According to defendants, (doc. 5) STR operates ten (10) stations in Alabama and two (2) in Illinois.

Plaintiff has no full-time permanent employees in Illinois, and its corporate management is shared with several other separate corporate entities.

II. Analysis

The Complaint (doc. 1)[6] alleges that defendants attempted to perform a "controlled burn" on property owned by defendant A.A. Nettles, and, in the process, destroyed a wooden trestle railroad bridge and surrounding tracks owned by plaintiff's predecessor in interest. Plaintiff asserts that this court has federal question jurisdiction over Count I of the Complaint pursuant to 28 U.S.C. §1331, and diversity jurisdiction pursuant to 28 U.S.C. §1332.

A. Federal Question Jurisdiction

28 U.S.C. § 1331 provides federal district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The party asserting federal jurisdiction has the burden of establishing it. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342, n.3 (2006). The presumption is that "federal courts lack jurisdiction unless the contrary appears affirmatively from the record." Id. (quoting Renne v. Geary, 501 U.S. 312, 316 (1991)). In determining whether jurisdiction exists under 28 U.S.C. § 1331, a court must look to the well-pleaded complaint alone. Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149(1908). " 'A

---

[5] Plaintiff also asserts that, in the year to date, the company has made some $58,000 from the Illinois operations and lost $9,000 in Alabama. The income information for less than four months of the current year for an operation which has been in existence for several years is incomplete and unconvincing.

[6] The complaint also contains state law claims against defendants for wantonness (Count Two), negligence per se (Count Three), strict liability (Count Four) and trespass (Count Five).

suggestion of one party, that the other will or may set up a claim under the Constitution or laws of the United States, does not make the suit one arising under that Constitution or those laws.' " Id., 211 U.S. at 153 (quoting Tennessee v. Union & Planters' Bank, 152 U.S. 454, 464 (1894)).

Count I of Plaintiff's Complaint is titled "Violation of Federal Statute" and cites violations of 18 U.S.C. § 1992(a)[7], as well as "public policy" and the Interstate Commerce Act. As such, it appears designed to raise a federal civil cause of action; however, 18 U.S.C. § 1992(a) is a criminal statute. Plaintiff does not claim that this count alleges a private cause of action under the federal statute. Indeed, in responding to the Motion to Dismiss (Response, doc. 11), Plaintiff states that Count I instead states a cause of action under state law for willful violation of its rights, relying on the federal criminal statute to give those rights shape.[8] Plaintiff argues that the state law claim raises "substantial issues of federal law," and thus supports the exercise of federal jurisdiction. Dunlap v. G&L Holding Group, Inc., 381 F.3d 1285, 1290 (11th Cir. 2004).

In order for a state-law claim to raise substantial questions of federal law, "a right of immunity created by that law must be an essential element of the plaintiff's claim; the federal right or immunity that forms the basis of the claim must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another." Mobil Oil Corp.

---

[7] 18 U.S.C. §1992 is entitled "Terrorist attacks and other violence against railroad carriers and against mass transportation systems on land, on water, or through the air."

[8] The Court thus need not address whether, as a claim under a federal statute, Count I would be sufficient to support federal jurisdiction. "[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998); Bell v. Hood, 327 U.S. 678, 685 (1946)(claim under federal law confers federal question jurisdiction unless it "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous.").

v. Coastal Petroleum Co., 671 F.2d 419, 422 (11th Cir.1982). "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 813, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650 (1986). "A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends." Mobil Oil, 671 F.2d at 422.

Plaintiff does not clearly articulate how it anticipates that the federal criminal statute cited in Count I will arise in relation to its state law claim under Count I. In its Response to the Motions to Dismiss, plaintiff merely states that "STR has alleged a state wantonness claim that turns on the interpretation of a federal interstate commerce / anti-terrorism statute. Such concerns are uniquely federal in nature, and the interpretation of the statute to determine whether a violation has occurred is a substantial federal question." (Doc. 11 at 11)

In Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1295 (11th Cir. 2008), the Eleventh Circuit Court of Appeals stated that there was no "general rule of exercising federal jurisdiction over state claims resting on federal ... statutory violations." Id. (citing Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308, 319 (2005). Rather, the Court noted that the cases exhibiting substantial federal questions will typically be those involving a "nearly pure issue of [federal] law," rather than those involving "fact-bound and situation-specific" contexts in which federal questions are enmeshed. Id.

That is clearly not the situation in the instant case. Plaintiff's claims are primarily tort claims for damage to property. The Court finds that plaintiff has failed to bear its burden to demonstrate

that the possible reference to the criminal statute in seeking to prove these state property claims would be of such an integral nature that would warrant the exercise of federal jurisdiction.

      B.      <u>Diversity of Citizenship Jurisdiction</u>

Plaintiff next argues that the Court has jurisdiction pursuant to 28 U.S.C. §1332, because the parties are completely diverse. In support of this argument, plaintiff asserts that its principal place of business is in Illinois, where it maintains its corporate offices and some minimal track and other railroad assets, rather than in Alabama, where it operates its railroad business and maintains the bulk of its physical assets.

28 U.S.C. § 1332 (a) provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--(1) citizens of different States...."  Under § 1332, a corporation is "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." <u>Sweet Pea Marine, Ltd. v. APJ Marine, Inc</u>., 411 F.3d 1242, 1247 (11th Cir.2005) (citing 28 U.S.C. § 1332(c)(1)); <u>see</u> <u>also</u> <u>MacGinnitie v. Hobbs Group, LLC</u>, 420 F.3d 1234, 1239 (11th Cir.2005) ("For diversity purposes, a corporation is a citizen of both the state where it is incorporated and the state where it has its principal place of business.").

In this Circuit, the principal place of business of a corporation for purposes of diversity jurisdiction is determined under the "total activities" test, an amalgam of the "nerve center" and "place of activities" tests utilized in other circuits. <u>MacGinnitie</u>, 420 F.3d at 1239. The "nerve center" is usually the corporate offices of the corporation, and the "place of activities" is the location of a majority of its sales or production activities. <u>Id.</u>. The Eleventh Circuit has explained that "[w]hen the results of these two tests differ, under the 'total activities' test, the district court must

6

conduct a 'somewhat subjective analysis' to choose between the two results." TSG Water Resources, Inc. V. D'Alba & Donovan CPAs, P.C., 260 Fed. Appx. 191, 196 (11th Cir. 2007)(quoting MacGinnitie, 420 F. 3d at 1239).

The Eleventh Circuit has provided some guidance for the analysis of the "total activities" of a corporation; where the company's activities are scattered over several states and thus not concentrated in one state, the district court may place greater emphasis on the "nerve center" factors. See MacGinnitie, at 1239; Sweet Pea Marine,, 411 F.3d at 1248 (11th Cir. 2005). However, when, as in the present case, the corporation's executive offices are in one state and its physical operations lie wholly or predominantly in another state, emphasis is on the "place of activities" factor. See TKI, Inc. v. Nichols Research Corp., 191 F.Supp.2d 1307, 1316 (M. D. Ala.2002); see generally J.A. Olson Co. v. City of Winona, Miss., 818 F.2d 401, 411 (5th Cir.1987) (using "total activities" test and explaining general rule that "when considering a corporation whose operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business" but "when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant").

In their Reply (doc. 14 at 11), defendants acknowledge that the limited evidence is sufficient to satisfy the "nerve center" portion of the test; plaintiff's corporate operations are centered in Illinois. They assert, however, that the "place of activities" is clearly in Alabama and that the court should determine Alabama to be the company's principal place of business.  The court agrees.

The limited record before the Court reflects that STR is a railroad company and the vast majority of its railroad business activities and physical assets are concentrated in Alabama. While plaintiff's executive offices are located in Illinois, the bulk of plaintiff's operation is located in

Alabama. Accordingly, the court finds that plaintiff's principal place of business is in the State of Alabama and thus complete diversity is destroyed.

III.     Conclusion

Based on the foregoing, the undersigned does not find that the complaint presents a substantial question of federal law, and thus finds that federal question jurisdiction is unavailable. The Court further finds that plaintiff STR's principal place of business is in Alabama and that it is thus an Alabama citizen, precluding the exercise of jurisdiction pursuant to 28 U.S.C. §1332. The Court holds that it lacks subject matter jurisdiction. Accordingly, it is the recommendation of the undersigned that the defendants' Motions to Dismiss for Lack of Jurisdiction be GRANTED and the case DISMISSED.

The attached sheet contains important information regarding objections to the Report and Recommendation.

**DONE** this the 18th day of June 2009.

 /s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.Objection. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.Opposing party's response to the objection. Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.Transcript (applicable where proceedings tape recorded). Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

9